## T. & S. OAKLEY *vs.* STANLEY.

The right to overflow adjoining premises of a *grantor* to the extent necessa-
ry to the profitable employment of a *water privilege* conveyed, in the man-
ner in which it existed and had been used previous to the grant, passes to
the *grantee* as necessarily appurtenant to the premises conveyed.

ERROR from the Orange common pleas. The plaintiffs
sued Stanley in a justice's court for overflowing their lands
by means of a dam of a cotton factory belonging to him. The
defendant had a verdict before the justice. The plaintiffs
appealed to the Orange C. P. ; on the trial in which court
the following facts appeared : The plaintiffs are the owners
of a grist-mill on a stream in the town of Blooming-grove,
and the defendant is the owner of a cotton factory situate
below the grist-mill of the plaintiffs; the dam of the factory

causes the water to flow back beyond the line of the premises belonging to the defendant, and the milling establishment of the plaintiffs, a few rods above the line, would be much more valuable if the factory dam were removed, by enabling them to increase the diameter of their wheel. Both parties claim under the same source of title. In February, 1813, one John Caldwell mortgaged the whole premises to W. Denning; in December, 1813, Caldwell, for the consideration of $1250, by warantee deed, conveyed the premises, now in possession of the defendant, to one Hatch, under whom the defendant holds; in May, 1815, Denning executed a quit claim to Caldwell of the premises conveyed to Hatch, including the ground whereon the factory dam stands, which was erected in October, 1813, of the same height that it now is; was then and is now used to drive the factory, and flowed the water up to the wheel of the grist-mill, and beyond the mill in the bed of the stream. The main value of the defendant's premises consists in the water privilege, and the dam cannot be lowered without destroying the same. The mortgage from Caldwell to Denning was foreclosed in chancery, and the premises mortgaged sold in 1823 for the consideration of $9000 to the plaintiffs, to whom the same were conveyed, *excepting* however by metes and bounds, the premises conveyed to Hatch and released to Caldwell. The court charged the jury that by intendment of law, Denning knew at the time of his release to Caldwell, that the dam of the factory flowed the water back beyond the line of the released premises, that the plaintiffs were estopped thereby, and that the defendant was entitled to a verdict; which was accordingly rendered. The plaintiffs excepted.

*S. J. Wilkin*, for plaintiff in error. Parties are concluded by the boundaries specified in conveyances. 16 *Johns. R.* 110. The deed to Hatch did not confer the right to flow lands not included in the conveyance to him. A right to flow lands can be obtained only by grant. 2 *Merivale*, 354. *Angel on Water courses*, 63.

*T. McKissock*, for defendant in error. The deed to Hatch conveyed not only the premises described in it, but also the

right to flow the water back as an easement or appurtenance. Where a thing is granted, the grant implies a right to all the means of enjoying it. The conveyance of the dam conferred the right to flow the water back as far as the dam would flow it. 7 *Comyn's Dig.* 390, *tit. Suspension, B.* 15 *Johns. Rep.* 447. 2 *Wendell's R.* 472. 12 *Mass. R.* 157. *Shep. Touch.* 88. *Co. Litt.* 121, *a.* 121, *b. Cro. Jac.* 121. 6 *Conn. R.* 281. The plaintiffs are estopped by the quit-claim of Denning, and by the reservation in their deed.

**ALBANY,**
October, 1830.

Oakley
v.
Stanley.

*By the Court,* SUTHERLAND, J. The quit-claim from Denning to Caldwell enured to the benefit of Hatch and his grantees, and gave to the conveyance to Hatch the same legal effect and operation as though it had been prior to the mortgage to Denning. *Jackson* v. *Bull,* 1 *Johns. Cas.* 90. *Jackson* v. *Murray,* 12 *Johns. Rep.* 201. *Jackson* v. *Stevens,* 13 *id.* 316. 16 *id.* 115. What then would have been the effect of the conveyance to Hatch as between him and Caldwell his grantor, if the residue of the premises had been retained by him instead of having been mortgaged to Denning? The evidence shews that the principal value of the defendant's premises consists in the water privilege, and that it will be entirely destroyed if the dam is lowered. The dam, as it now exists, was erected in October, 1813, prior to the conveyance to Hatch. It was admitted that it caused the water to flow back beyond the defendant's line upon the premises of the plaintiffs; and it appears that, although the back water thus produced does not impede the operation of the plaintiffs' mill, yet the establishment would be much more valuable if the defendant's dam was removed, as they would then be able to increase the diameter of their wheel. Upon this state of facts, it appears to me there can be no question that Hatch acquired an absolute right to maintain the dam at the height at which it was when he purchased from Caldwell, and that he or his grantees are not responsible to Caldwell or those who hold under him for any injury which the adjoining premises may receive from an overflow of water produced by the dam. Caldwell intended to sell and Hatch intended to purchase a valuable water privilege, for which a

large consideration was paid. The right to overflow the adjoining premises of the grantor to the extent necessary to the profitable enjoyment of the privilege purchased, and in the manner in which it existed and had been used previous to the grant, passed to the grantee as necessarily appurtenant to the premises conveyed.

There was no error, therefore, in the charge of the court below, and the judgment must be affirmed.