## CARHART *vs.* FRENCH.

A clause, in a lease in fee of lands, reserved to the lessors "all mines and minerals," and all " streams of water and so much grounds within the same premises." and also so much wood, &c., as may be requisite for the "working of said mines," and provided for a proportional deduction of rent in case the lessors entered on and used any portion of the premises. After the reddendum clause was a condition that the lessee should not erect any mill or mill-dam on the demised premises, nor give any " obstruction whatsoever to the said parties of the first part, their heirs and assigns, to their and each of their prejudice in the full enjoyment of all the rights, titles and privileges saved to him or them by the saving and exception before in these

presents above mentioned." Plaintiff deduced title from the lessee through sundry mesne conveyances, all of which refered to the above mentioned lease and contained the same clauses. Subsequently to the granting of this lease, lessors conveyed adjoining premises to A., who conveyed to defend-ant, who erected thereon a dam for the purposes of a flouring mill, and which caused the water to set back and overflow plaintiff's land. *Held*, that there was no right reserved to the lessors, or their assigns, to erect such a dam.

The lessors, and those claiming under them, might have used the water within the demised premises for mining purposes; but not on other lands to the prejudice of the plaintiff, even for those purposes. *Per* COWEN, J.

ACTION of Nuisance. The suit was brought to recover damages sustained by the plaintiff in consequence of the erection by the defendant of a dam on the Norman's Kill, which caused the water to set back and overflow the plaint-iff's land. On the trial the case was this : In 1785, Abraham Ten Broeck and wife became seized in fee of a large tract of land comprehending the premises overflowed and the land on which the defendant's dam was erected. On the 1st of May, 1793, they leased a portion of said tract (including the land overflowed) in fee to John Bullock, under whom the plaintiff claimed through sundry mesne conveyances. The lease con-tained a clause in these words : " Saving and always excepted to the said parties of the first part, their heirs and assigns, out of this present grant and release, all mines and minerals that are now, or may be found within the premises hereby granted and released ; and all the creeks, kills, runs and streams of water, and so much grounds within the same premises as they the said parties of the first part, their heirs and assigns, may think requisite and appropriate, at any time hereafter, for the erection of the works and buildings whatsoever for the convenient working of the said mines ; and also all such wood, firewood and timber as they may think proper to use in building, repairing, accommodating and working the said mines, with liberty to them, their heirs and assigns, to dig, trench and use the ground for either of the said purposes, and to pass and repass through the pre-mises with their and each of their horses, cattle, carriages and servants, and to lay out roads therefor. But it is hereby provided, that for the full proportion, or as many acres of

land as shall be encumbered and rendered useless to the party aforesaid of the second part, his heirs, &c., or assigns, by such erecting, building and turning up the ground, ingress and egress, except necessary roads, there shall be so much deducted and defalked out of the yearly rent hereby reserved as in proportion to the acres of the whole tract aforesaid, during the time that it is encumbered and rendered useless." After the reddendum clause, it was added, " and upon this condition, that neither the said John Bullock, nor his heirs nor assigns, do at any time hereafter erect or permit, or cause to be erected, any mill or mill-dam, upon any creek, kill, run or stream of water within the premises hereby granted; nor give, nor cause to be given any manner of let or obstruction whatsoever to the said parties of the first part, their heirs and assigns, to their and each of their pre-judice in the full enjoyments of all the rights, titles and privileges saved to him or them by the saving and exception before in these presents above mentioned."

On the 1st of February, 1805, Ten Broeck and wife, con-veyed 500 acres of the same tract, including the premises on which the defendant's dam was built, to James McKown and Abel French, and the land so conveyed came by deed to the defendant, the son of Abel French. The deed to McKown and French, in addition to the description of the premises granted, expressly confered the " privilege of erecting a dam at the fall above mentioned, not exceeding five feet in width." The dam in question was accordingly erected by the defendant, for the purposes of a flouring mill, in the spring and summer of 1838.

One link in the plaintiff's chain of title was a deed from Abel French to Jeremiah Van Aukin, dated February 17th, 1829. All the conveyances, through which the plaintiff claimed, refered to the lease from Ten Broeck and wife to Bullock, and contained the same clauses of exception. The date of the conveyance from McKown and Abel French to the defendant was not shown by the bill of exceptions; nor was the conveyance produced on the argument.

The counsel for the defendant insisted at the trial, that by the clauses of exception contained in the lease and other

conveyances, the right to erect the dam for the purpose of a flouring mill, and not in any way connected with mining purposes, was reserved; and that the defendant thereby, and under his deed, had a right to do the act and cause the injury complained of. The circuit judge charged the jury accordingly, and the plaintiff's counsel excepted. A verdict was rendered in favor of the defendant; and the plaintiff now moves for a new trial on a bill of exceptions.

*M. T. Reynolds*, for the plaintiff.

*J. Van Buren*, for the defendant.

*By the Court*, COWEN, J. None of the cases relied on by the defendant's counsel support the claim which he has thought proper to interpose under the clauses in question. *Jackson* v. *Vermilyea*, 6 Cowen, 677, holds that the exception of a mill site in a conveyance operates as an exception both of the soil for the mill site and of land necessary for the pond and the milling business. *Dygert* v. *Matthews*, 11 Wend., 35, admitted an exception of so much land as is necessary for the use of a grist-mill to be good; but denied its operation until the grantor or his assigns should exercise the right. *Oakley* v. *Stanley*, 5 Wend., 523, decided merely that the conveyance of land on which a factory dam stood at the time, carried the right to flow back on other land of the grantor and obliged those claiming under him by title subsequent, to allow the same thing. In *Provost* v. *Calder*, 2 Wendell, 517, 519, 523, 4, it was held, that excepting *the sole and only right* of a stream of water, and providing that *the grantee shall not erect or build any kind of water works on the stream*, but reserving the same to the grantor, operated as a general reservation of a right to use the water power.

In the case at bar, there is no exception, as in those quoted, of *mill sites*, nor so *much land as is necessary for a mill*; nor the *sole right to the stream*, followed by an inhibition to erect mills; nor any thing like either. The lease first contains the exception of all *mines* and *minerals*. This is immediately followed by an exception of all creeks and streams, and so

Carhart v. French.

much grounds as the lessors, &c., may think requisite and appropriate for the erection of works and buildings for the *convenient working of the mines.* Wood and timber are then reserved for the same purpose, and the right to dig, with that of passing and repassing ; all, however, limited to the same purpose by express terms. Farther on, there is a condition that the lessee, his heirs or assigns are not to give any let or obstruction to the lessors, their heirs and assigns, to their prejudice, in the enjoyment of all the rights, titles and privileges *saved* to him or them by the *saving and exception* before in the lease mentioned. What are those rights, titles and privileges *saved and excepted?* There is no saving or exception except for mining purposes, if we are to take the words in their fair and obvious import. The intermediate condition that neither the lessee nor his heirs, &c., shall erect mills or dams on the premises, is not a saving or exception of any right in the lessors, but a mere restriction of the lessee's right. The lessors or their friends might have claimed a monopoly of the milling business for the neighborhood, and the condition might have been inserted to secure that. It would be a most singular construction of a clause forbidding a grantee to build a mill on the granted premises, which would authorize a dam below sufficient to drown him out.

It is said to be the same thing to the plaintiff whether the dam be built for the flouring or the mining business. How do we know that ? No mine has yet been discovered. If such a discovery should ever be made, the profit may be too inconsiderable to warrant the erection of hydraulic machinery. But the argument, if true, proves too much. The rule insisted on would extend to the wood and timber in the same clause. Thus the lessee is not only to be flowed, but his premises may be wasted for the milling business, under an exception of mines. It supposes that a man, who is ready to yield an exception for a purpose by which he can probably never be affected, intends a purpose by which he certainly would.

But it is said a proportionable deduction of rent is provided for. If this were a correct principle of construction,

we have no means of ascertaining the adequacy of the pro-
portion; but it is not.   The rule laid down in *Dygert* v.
*Matthews* is the true one : " The reservation of the land is for
a specific purpose, and an appropriation to any other object
by the grantors or their assigns is without right.   They can
be in no better condition than strangers."   It was said in
*Provost* v. *Calder*, that every doubt upon the words should
be turned against the grantor.   But I do not believe we are
warranted in going to rules of construction.   The expres-
sion limits the purpose.

So far, I have supposed that the clauses saved the right,
whatever it was, to make erections off the premises demised.
But clearly they did not.   The exceptions are confined in
the clearest terms to the streams, &c., within the boundaries
of the lease to Bullock.   Within that compass Ten Broeck,
and those claiming under him, might have used the water
for mining purposes ; not on other lands to the prejudice of
the plaintiff, even for those purposes.   The words of restric-
tion on which the defendant's counsel relies as the main, if
not the sole argument for the right of building a mill-dam,
admit of no possible application to land without the bound-
aries of the lease to Bullock.

The criticism which denies a full deduction of title from
Bullock to the plaintiff, and insists that the defendant claims
under an absolute grant prior in date to that under which
the plaintiff claims, was not made at the trial.   Nor, if
made, is it apparent how it can affect the plaintiff.   Abel
French is shown by the bill of exceptions to be the source
of title common both to the plaintiff and defendant.   He
conveyed to Van Aukin in 1829, with clauses excepting no
more than those in the lease from Ten Broeck and wife.
The plaintiff stands in Van Aukin's place, from whom the
title came with the same clauses as often as the transfer
may have been repeated.   The point stated to have been
made for the defendant at the trial, implies that the title
passed from Abel French and McKown to the defendant,
subsequently to the date of the deed to Van Aukin ; and if
this was not so, the fact should have been stated in the bill.
The inference is against it.   If the defendant in fact took

an absolute title from one of the plaintiff's predecessors in his line of conveyances, and that too, prior to the deed to Van Aukin, then I admit that the rule in *Oakley* v. *Stanley* applies. If the plaintiff claims under a man who might grant the right to flow, and he did so before putting his right out of his hands on the way to the plaintiff, that fact may be shown on the new trial. The contrary must be assumed upon the case as stated by the bill.

I am of opinion that the verdict should be set aside and a new trial granted.

Ruled accordingly.