French *agt.* Carhart.

## NOVEMBER TERM, 1847.

## FRENCH, JR., plaintiff in error, *agt.* CARHART, defendant in error.

### *Questions Discussed.*

1. Whether the *reservation* in the lease referred to (in the case), was confined to the use of the stream for mills erected, &c., for *mining* purposes only.

2. Whether the reservation of "all creeks, kills, streams and runs of water" in the lease was *absolute for all purposes*.

3. Whether the conveyance and reservations bounded the party to the edge or center of the stream.

4. Whether the circuit judge erred in refusing to submit to the jury a question of fact, as to the true location of the deed under which title was derived.

Carhart sued French for *nuisance*, for overflowing his land, by reason of defendant's mill dam erected for flouring purposes on the stream below plaintiff's land, which bounded on the same stream. This stream was the Norman's kill, in Guilderland, Albany county. Defendant pleaded the general issue. The cause was tried at the Albany circuit on the 7th October, 1843, before Hon. JOHN P. CUSHMAN, circuit judge.

The plaintiff introduced in evidence, as a source of his title, two deeds which reached back to 1808, and came up to 1818,

showing the title of the premises in question in Abel French (senior).

He next introduced a deed from Abel French (senior) to Jeremiah Van Auken, dated seventeenth of February, one thousand eight hundred and twenty-nine, for the west half of said farm being the premises intended to be described in the plaintiff's declaration, together with another piece of land containing twenty-eight acres. The consideration for the whole so conveyed, being four thousand four hundred and seventy dollars; which said deed contained the following reservations and conditions as to the west half of the Traver farm, being the premises on which the nuisance is claimed to exist, to wit:

" The first described tract of land, one hundred and twenty-five acres, is conveyed, subject to an annual rent of five bushels and twenty-four pounds of good merchantable wheat, one-third part of a load of wood, a day's service with wagon and horses, one-third of four fat fowls, and to such other covenants, reservations and conditions as are mentioned in the original deed or lease forever given by General Abraham Ten Broeck, deceased." The plaintiff next introduced a deed of the same premises from Van Auken and wife to the plaintiff, dated first of April, one thousand eight hundred and thirty-seven.

*Jacob Shell,* a witness for plaintiff, identified the plaintiff's premises—Old Mr. French had a dam on the second fall and a mill as long ago as witness could remember; was sixty-seven years old. A dam on the upper fall (the dam in question) built above five years ago, in place of one carried off by a freshet. Did not think any previous dam threw the water as high as the present one.

*Edward W. Cheesebro,* a witness for plaintiff—had surveyed some—made a map of the premises in question—The whole of plaintiff's land overflowed by the dam was three and a half or four acres—about one third more than by the former dam.

Several other witnesses for plaintiff gave testimony as to the effect the present and former dams on the upper and second falls, had in flowing the water.

The defendant then introduced and read in evidence a conveyance covering the premises occupied by both defendant and

plaintiff, from Stephen Van Rensselaer, lord of the Manor of Rensselaerwyck, to Abraham Ten Broeck and wife, dated 25th of January, 1764, conveying to the grantees a tract called Elizabethfield, containing 1322 acres of land, lying on both sides the Normanskill, reserving certain nominal rents and restrictions.

Also another deed from Stephen Van Rensselaer, the son of the said Stephen, to the same grantees, releasing the rents, reservations and restrictions in the foregoing conveyance.

Next a deed from said Ten Broeck and wife to James Mc Kown and Abel French, dated first of February, 1805, conveying to said grantees five hundred acres of land, including the premises on which the dam is erected, lying on both sides the Normanskill, with the mills, dwelling house privileges and appurtenances The deed contained a clause in the following terms, viz:

" Together with the privilege of erecting a dam at the fall above mentioned," (the upper fall mentioned by the witnesses where the dam now is, not exceeding five feet in height).

The defendant then produced divers mesne conveyances, vesting the title so conveyed to M'Known and French in himself in fee.

It was admitted that the dam erected by the defendant was to supply his flouring mill, and not for any mining purposes.

The plaintiff then, in explanation of the deed of Abel French to Jeremiah Van Auken, under which plaintiff claimed title, and as a part thereof, introduced, in evidence, the lease from Ten Broeck and wife to Bullock, dated first May, 1793.

This lease contains the reservations in question, an abstract is as follows:

" This indenture, made the first day of May, Anno Domine one thousand seven hundred and ninety-three, between Abraham Ten Broeck, Esq., and Elizabeth, his wife, of the city of Albany, of the one part, and John Bullock, of the town of Bethlehem, in the county of Albany, of the other part, witnesseth: that the said parties of the first part, for and in consideration of one thousand pounds, current money of New York, to them now paid, and more especially for, and in consideration of, the rents, covenants, conditions, agreements, and provisoes hereinafter reserved,

contained, and expressed, have granted, bargained, and sold, aliened, released, and confirmed, and by these presents do grant, bargain, and sell, alien, release, and confirm unto the said John Bullock, (in his actual possession now being, by virtue of a lease therefor by indenture to him made, dated the date before the date hereof, and by force of the statute for transferring of uses into possession), and to his heirs and assigns, forever, all that certain tract of land situate, lying and being in the Manor of Rensselaer-wyck, on the west side of Hudson river, about twelve miles from the city of Albany, on both sides of a certain kill or creek, distinguished by the name of Normanskill, butted, bounded and described as follows, viz: Beginning &c., (describing by metes and bounds 239 acres. Also one other piece &c., describing it contain-46 acres,) saving and always excepting to the said parties of the first part, their heirs and assigns, out of this present grant and release, all mines and minerals that are now or may be formed within premises hereby granted and released, and all the creeks, kills, runs and streams of water, and so much ground within the same premises as they the said parties of the first part, their heirs and assigns, may think requisite and appropriate, at any time hereafter, for the erection of the works and buildings whatsoever for the convenient working of the said mines, and also all such wood, firewood and timber as they may think proper to use in building, repairing, accommodating and working the said mines, with liberty to them, their heirs and assigns, and their and each of their servants, to dig through and use the ground, for either of the said purposes, and to pass and repass through the premises with their and each of their horses and cattle, carriages and servants, and to lay out roads therefor.

But it is here provided that, for the full proportion, or as many acres of land as shall be encumbered and rendered useless to the party aforesaid of the second part, his heirs, executors, administrators and assigns, by such erecting buildings and turning up the ground, ingress and egress, except necessary road, there shall be so much deducted and defalked out of the yearly rent hereby reserved as in proportion to the acres of the whole tract aforesaid, during the time that it is encumbered and rendered useless, with the right, members and appurtenances thereof, and all

houses, edifices, profits, advantages, emoluments and heredita-
ments to the said tract thereby granted appertaining; also the
reversion and reversions, remainder and remainders of the same,
and all the estate, right and title, interest, property, claims and
demands whatsoever, both in law and equity, of the said parties
of the first part, of, in or to the same, or any part thereof, with
reasonable estovers for building, fencing, fuel; also common of
pasture for all beasts, commonable within such ground of the said
manor as shall from time to time lay waste, and not particularly
granted, appropriated and demised by Stephen Van Rensselaer,
his heirs and assigns.   To have and to hold the said tract of land
premises hereby granted, with their appurtenances, with the said
John Bullock, his heirs and assigns, to his and their only proper
use and behoof forever, yielding and paying therefor yearly, and
every year, on any day in the month of January or February,
unto the said Abraham Ten Broeck and Elizabeth, his wife, their
heirs and assigns, the quantity of twenty skipple of good and
merchantable winter wheat, to be delivered at the dwelling house
of the said Abraham Ten Broeck and Elizabeth, his wife, in the
city of Albany; and also performing, with sleigh and horses, or
horses and wagons, or horses and plough, and a sufficient man to
drive the same, one day's service yearly and every year: also
paying four fowls in lieu and stead of all other rents and services
whatsoever; and upon this condition that neither the said John
Bullock, nor his heirs nor assigns, do at any time hereafter erect
or permit, or cause to be erected, any mill or mill dam upon any
creek, kill, river or stream of water within the premises hereby
granted; nor give, nor cause to be given, any manner of let or
obstruction whatsoever to the said parties of the first part, their
heirs or assigns, to their and each of their prejudice in the full
enjoyment of the rights, titles and privileges saved to him or
them by the saving and exception before in these presents
above mentioned, (then giving a power of reentry &c)."

*Abel French* (senior) was then called as a witness by defend-
ant.   He and McKown took possession of the property in 1806.
He erected a dam on the second fall in 1813, which went off the
next spring in a freshet; that dam was 12 feet high.   Built a
second dam in 1814 in the same place, 12 feet high, which co-

vered the upper falls six inches higher than any dam he had seen on the upper falls. When the water was up he went over the upper falls with loaded scows. Second dam stood two or three years. The dam at the upper falls of 3 feet did not flow the water as high by six inches as the 12 feet dam at the second falls did. When the 12 feet dam at the second falls gave way he erected a dam at the upper falls 3 feet. When witness sold to Van Auken the latter had been all over the premises and knew of the flowing of the water. The water flowed as far on plaintiff's premises then as at this time. The mill was useless without the dam and could not be otherwise supplied. Several other witnesses were introduced by plaintiff, showing the situation of the dam at the upper falls and the flowing of the water which did not materially vary the other testimony stated on that subject.

*Jeremiah Van Auken* testified that he was the person who purchased the farm of French, and he sold to the plaintiff. The dam at the upper falls existed when he purchased. Carhart went over to the farm before he purchased, and saw the state of the stream, and how it was dammed up. It was dammed up all the time I owned the farm. I never made objection to it. The defendant's counsel then offered to show by this witness, in explanation of the reservations in the deed from French to him, that, at the time of the conveyance to witness by French, he was informed by French that he reserved a right to keep up the dam then standing, and to raise it to the height of five feet: defendant's counsel insisting that the language of the deed, being ambiguous, might be explained by parol·proof, showing the understanding of both parties to the conveyance at the time the same was executed. But the plaintiff's counsel objected to any proof of the declarations of French, the grantor, and the circuit judge declared the same inadmissible, and excluded the same: to which decision the defendant's counsel then and there excepted.

Defendant's counsel then offered the same declarations in evidence, in explanation of the word "stream," which was contained in one of the reservations in the Ten Broeck lease, to which the plaintiff's counsel then objected, and the circuit judge excluded the same: to which decision the defendant's counsel then and there excepted.

French *agt.* Carhart.

The defendant's counsel then offered the same declarations in evidence, as proofs of the location of the deed from French to Van Auken, which bounded on the creek: but the plaintiff's counsel objected to this evidence, and the circuit judge excluded the same: to which decision the defendant's counsel also excepted.

The testimony on both sides being closed, his honor the circuit judge did deliver his opinion, and charged the jury *that the only* question of fact for them to find was the amount of plaintiff's damages; that the plaintiff had shown a perfect title to all the land covered by his deed, extending to the middle of Normanskill, subject only to the reservation of creeks, kills, streams, and runs of water, for mining purposes; that the defendant had shown no right to dam Normanskill, or use the water, except for mining purposes; that admitting that Abel French, the elder, had the absolute fee of the Van Auken farm at the time of his conveyance, and had it for a hundred years, yet, in judgment of law, his deed to Van Auken carried the grantee to the middle of the stream, and his reservation of the stream or creek was only for mining purposes.

To all and every part of which charge the defendant's counsel then and there excepted, and insisted and asked his honor to charge the jury.

1st. That the conveyance of French to Van Auken, with the reservations contained therein, bounded the said Van Auken on the edge of the stream as it then was, and gave him no title in the land then under water.

2d. That the reservation in said deed of "all creeks, kills, streams and runs of water," was an absolute reservation of the same for any and every purpose.

3d. That the location of French's deed was a question of fact for the jury.

4th. That the true construction of French's deed, and the reservation in Ten Broeck's lease, which were to be taken together as one instrument, were ambiguous, and were questions of fact for them to determine from the instruments themselves, and from the surrounding circumstances which had been given in evidence.

5th. That the defendant, having given proof of a title to the

premises occupied by him older than the plaintiff's title, and a continued occupation under it, was entitled to a verdict.

But his honor the judge refused so to charge, and stated, in substance: That the deed from French to Van Auken reserved that right to the water only, which Ten Broeck had reserved in his conveyance; and that, having been held by the Supreme Court that this reservation was of the right to the use of the water for mining purposes only, and as it did not include the right to dam for milling purposes, any flowing of the water by the dam for milling purposes gave to the plaintiff a right of action.

To which refusal so to charge, and opinion so expressed, the defendant's counsel then and there excepted.

Under this charge, the jury found the defendant guilty of the nuisance, and assessed the damages at six cents besides costs.

The justices of the Supreme Court gave no written opinion on the decision of this cause. The cause had previously been before the Court on a motion to set aside a former verdict; and the counsel for the defendant, in opening the argument of this case, stating, in answer to an enquiry made by the court, that it involved the same question and no other, the Court said that the motion for a new trial must be denied.

On the decision of the *former* motion, the Court delivered the following Opinion:—

Cowen, Justice.—None of the cases relied on by the defendant's counsel, support the claim which he has thought proper to interpose under the clauses in question.

*Jackson ex dem. Hasbrouck* v. *Vermilyea* (6 *Cowen*, 677), holds that the exception of a mill site in a conveyance, operates as an exception both of the soil for the mill site and of land necessary for the pond and the milling business.

*Dygert* v. *Mathews* (11 *Wend.* 35), admitted an exception of so much land as is necessary for the use of a grist mill to be good, but denied its operation until the grantor or his assigns should exercise the right.

*Oakley* v. *Stanley* (5 *Wend.* 523), decided merely that the conveyance of land on which a factory dam stood at the time,

carried the right to flow back on other land of the grantor, and oblige those claiming under him by title subsequent to allow the same thing.

In *Prevost* v. *Calder* (2 *Wend.* 517, 519, 523, 4), it was held that excepting the *sole and only right of a stream of water, and providing that the grantee shall not erect or build any kind of water work on the stream,* but reserving the same to the grantor, operated as a general reservation of a right to use the water power.

In the case at bar, there is no exception as in those quoted, of *mill sites,* nor *so much land as is necessary for a mill,* nor the *sole right to the stream,* followed by an inhibition to erect mills, nor any thing like either.

The lease first contains the exception of *all mines and minerals.* This is immediately followed by all creeks and streams, and so much ground as the lessor, &c., may think requisite and appropriate for the erection of works and buildings for the convenient working of the mines. Wood and timber are then reserved for the same purpose; and the right to dig, with that of passing and repassing. All, however, limited to the same purpose by express terms. Farther on, there is a condition that the lessee, his heirs or assigns, are not to give any let or obstruction to the lessors, their heirs and assigns, to their prejudice in the enjoyment of all the rights, titles and privileges *saved* to him or them by the *saving and exception* before in the lease mentioned. What are those rights, titles and privileges *saved and excepted ?* There is no saving or exception, *except for mining purposes,* if we are to take the words in their fair and obvious import. The *intermediate condition,* that neither the lessee nor his heirs, &c. shall erect mills or dams on the premises, is not a *saving or exception* of any right *in the lessors,* but a mere *restriction of the lessee's right.* The lessors or their friends might have claimed a monopoly of the milling business for the neighborhood, and the condition might have been inserted to secure that. It would be a most singular construction of a clause forbidding a grantee to build a mill on the granted premises, which would authorize a dam below sufficient to drown him out.

It is said to be the same thing to the plaintiff whether the dam

French *agt.* Carhart.

be built for the flouring or the mining business. How do we know that? No mine has yet been discovered. If such a discovery should ever be made, the profit may be too inconsiderable to warrant the erection of hydraulic machinery.

But the argument, if true, proves too much. The rule, if insisted on, would extend to the wood and timber, in the same clause. Thus the lessee is not only to be flowed, but his premises may be wasted for the milling business, under an exception of mines. It supposes that a man who is ready to yield an exception for a purpose by which he can probably never be affected, intends a purpose by which he certainly would. But it is said a proportionable defalcation of rent is provided for. If this were a correct principle of construction, we have no means of ascertaining the adequacy of the proportion; but it is not.

The rule laid down in *Dygert* v. *Mathews,* is the true one. " The reservation of the land is for a specific purpose, and an appropriation to any other object by the grantors or their assigns, is without right. They can be in no better condition than strangers." It was said in *Provost* v. *Calder,* that every doubt upon the words should be turned against the grantor. But I do not believe we are warranted in going to rules of construction. The expression limits the purpose. So far I have supposed that the clauses saved the right, whatever it was, to make erections off the premises demised. But clearly they did not. The exceptions are confined in the clearest terms to the streams, &c., within the boundaries of the lease to Bullock. Within that compass, Ten Broeck and those claiming under him, might have used the water for mining purposes; not on other lands, to the prejudice of the plaintiff, even for those purposes. The words of restriction on which the defendant's counsel rely as the main, if not the sole argument for the right of building a mill dam, admit of no possible application to land without the boundaries of the lease to Bullock.

The criticism which denies a full deduction of title from Bullock to the plaintiff, and insists that the defendant claims under an absolute grant prior in date to that under which the plaintiff claims, was not made at the trial. Nor if made, is it apparent how it can affect the plaintiff. Abel French, senior, is shown by

4

the bill of exceptions to be the source of title common both to the plaintiff and defendant. He conveyed to Van Auken in 1829, with clauses excepting no more than those in the lease from Ten Broeck and wife. The plaintiff stands in Van Auken's place, from whom the title came with the same clauses as often as the transfer may have been repeated. The point stated to have been made for the defendant at the trial, implies that the title passed from Abel French, senior, and McKown to the defendant subsequently to the date of the deed to Van Auken; and if this was not so, the fact should have been stated in the bill. The inference is against it. If the defendant in fact took an absolute title from one of the plaintiff's predecessors in his line of conveyances, and that, too, prior to the deed to Van Auken, then I admit that the rule in *Oakley* v. *Stanley* applies. If the plaintiff claims under a man who might grant the right to flow, and he did so before putting his right out of his hands on the way to the plaintiff, that fact may be shown on the new trial.

The contrary must be assumed upon the case as stated in the bill.

I am of opinion that the verdict should be set aside, and a new trial granted.

*John Van Buren*, counsel for plaintiff in error.

*First.* The judge erred in charging the jury that the reservation of all " creeks, kills, streams and runs of water in French's Deed was a reservation only for mining purposes.

1. The " covenants, reservations and conditions" in the lease from Ten Broeck, are a part of the deed from Abel French, sen., to Jeremiah Van Auken, under which plaintiff claimed title.

2. The reservation of " all creeks, kills, streams and runs of water" is absolute (*Oakley* v. *Stanley*, 5 *Wend.* 523; *Provost* v. *Calder*, 2 *Wend.* 517).

3. The construction thus given by the Court to the deed from Abel French, sen., in 1829, destroys the valuable prescriptive right the defendant has acquired by twenty-five years adverse possession.

*Second.* The conveyance from French to Van Auken, with the reservation contained therein, bounded the said Van Auken

on the edge of the stream, as it then was, and gave him no title to the land then under water (*Childs* v. *Starr*, 4 *Hill*, 369).

*Third.* The judge erred in refusing to submit to the jury as a question of fact, the true location of French's deed to Van Auken (*Frier* v *Van Alen*, 8 *J. R.* 495; *Livingston* v. *Ten Broeck*, 16 *J. R.* 94; *Rockwell* v. *Adams*, 7 *Cow.* 761; *Dibble* v. *Rogers*, 13 *Wend.* 536).

*Fourth.* The judge erred in overruling the questions put to Abel French (fol. 46, 47); and to Jeremiah Van Auken (fol. 51, 52, 53; 9 *Cow.* 125; 4 *Bing. N. C.* 187; *Chapman* v. *Black*, 3 *Kent's Com.* 2 ed. 421, 424; 17 *Mass. R.* 298; *Hatch* v. *Dwight*, 13th *Peters' Rep.* 89; *Bradley* v. *the Washington, Alexandria and Georgetown Steam boat Co.*, R. S. 2d ed. 727, §§ 45, 47).

*M. T. Reynolds,* counsel for defendant in error.

*First.* The conveyance by French to Van Auken (under whom the plaintiff below derives title), being absolute, and without reserving any right to flow any part of the lands thus conveyed, except such right as is reserved in the lease from Ten Broeck, divested the grantor (the defendant below), of a right to flow the land conveyed.

*Second.* The reservation in the lease referred to, is in terms confined to the use of the stream for mills erected, &c., used for the purposes of mining.

*Third.* The grant containing an express reservation, thereby more strongly excludes all implied reservations.

*Fourth.* The court decided correctly in overruling the objections and offers made by the defendant below.

*Fifth.* If any error was committed in relation to such ruling, the defendant having on the hearing before the Supreme Court waived all other objections than those raised at the prior hearing, is precluded now from urging those objections. (21 *Wend.* 290: 6 *Conn.* 289.)

Judgment reversed and venire de novo ordered.

NOTE. The court *held* that the reservation of the stream, was for *all* pur poses, and not for mining purposes merely.   And also that the reservation

was not merely of the natural bed of the stream. but of a right to use the stream in the same manner, and to set back the water to the same extent as when the grant was made.

### Reported 1 Comstock, 96.

JEWETT, Ch. J., GARDINIER and JOHNSON, Judges, delivered opinions for *reversal,* in which JONES and WRIGHT, Judges, concurred. BRONSON, Judge, delivered an opinion in favor of *affirming* the judgment, in which RUGGLES and GRAY, Judges, concurred.