By the Court. Slosson, J.
The plaintiffs, who were lessees of the store No. 18 Courtlandt street, seek to recover damages against the defendants, owners of the adjoining lot and premises on the westerly side of No. 18, for taking down the westerly wall of the latter store.
The two lots were originally but one, fifty-six feet in width, and owned by Peter Stuyvesant, who some fifty or sixty years ago erected thereon two buildings each twenty-eight feet in width, or exactly one half the width of the entire lot.
Between the two houses he constructed an arched passageway leading from the street to the yards in the rear, of about four feet in width, taken one half from each lot, and upon the crown of the arch, which served as its support, erected the wall in question, in which were- inserted the beams of each edifice. *198 The dividing line of the two premises ran through the centre of this wall.
By subsequent conveyances, lot Ho. 18 became, in 1848, the property of Jacob Surget, the plaintiffs’ landlord; and in 1849 lot Ho. 20 became the property of the defendants.
The first deed in the series was given by Stuyvesant to Fowler in 1791, by which he conveyed the entire premises, Hos. 18 and 20, with all and singular the easements, ways, rights, hereditaments, appurtenances, &c. In 1794 Fowler conveyed the said premises to Smith by the same description; and in 1796 Smith conveyed Ho. 18 separately to Burrowes, describing the same as bounded “ on the west by another house and lot of said Smith, being one moiety or half part of a large lot of ground containing 56 feet in front and rear by 138 feet in length, with the ways, easements, rights, &c., to the lot belonging.” Surget, the plaintiffs’ landlord, purchased of, or derived title through Burrowes.
In 1799 Smith conveyed Ho. 20 to John Atkinson, describing the premises as bounded “ on the east by a house and lot of ground late the property of said Smith, and is 28 feet in breadth, with the ways, passages, and privileges in and to the same belonging.”
The defendants purchased of, or derived title through Atkinson.
In May,1850, the defendants, intending to erect a new building upon their lot, in the place of the old one, began to take the latter down without at first disturbing the division wall, having previously given to the plaintiffs notice of their intention so to do. They were temporarily delayed by an injunction on the part of the plaintiffs, on the dissolution of which they proceeded with the removal of their building, and took down also the entire division wall with the arch on which it rested, and erected a new wall in its place, and as they allege with the consent of the owner of Ho. 18. Such consent, however, is put in issue by the pleadings, and does not appear to be proved.
The plaintiffs claim that the wall in question was a division wall, and not a party-wall; that it was common to both houses, and supported the roof and timbers of each, and that the arched passage-way was also common to both tenements; that by the *199 conveyance to Burrowes he acquired the fee to the middle of said division wall, and the exclusive property in half the wall, with the easement of support from the residue of the wall, and from so much of the arch as stood on the adjoining lot No. 20, and also from the building, which rights became vested in Surget, the plaintiffs’ landlord, who derived title through Burrowes, and they deny the right of the defendants to take down the entire wall.
The defendants claim that the wall was a party-wall; they deny that the owner of No. 18 was entitled, under the conveyances thereof, to any estate or interest in the premises, or that his building was entitled to any easement upon, or right of support from, said premises No. 20, or from any part thereof; and they say in their answer that, in the taking down of their own building, it was discovered that the said party-wall and the said arch, and the wall on their lot which in part supported the same, were so weak and insecure as to be incapable of standing upright without the support of the other walls and the timbers in the buildings so being taken down by them; and that, in its then position, said party-wall was dangerous to the lives of persons employed in and about the premises, and passing upon the streets in front of the same, and that said party-wall was a nuisance, inflicting great injury upon the said property of the defendants.
The buildings, which were originally dwelling-houses, appear to have been changed into stores in 1836, and a new story then added, at which time wooden posts and a girder were placed beneath the arch to support it, and the entrance was blocked up with brick.
The plaintiffs were lessees of No. 18 for a term of three years, of which one year remained unexpired at the time of the erection of the defendants’ new store.
A good deal of evidence was taken as-to the actual condition of the wall in regard to safety, and specific questions on that point were submitted to the jury, and the result of their finding was that the condition of the arch and party-wall was so dangerous on the first of Hay, 1850, the period immediately preceding its demolition, that a just regard to the safety of life and property rendered their removal necessary, and that, in *200 the exercise of ordinary prudence, it was expedient to remove the same; that, had no change been made, the ‘buildings were not fit or safe for occupation as stores during the year ensuing (the remaining year of the plaintiffs’ term).
They also found as a distinct fact, that the removal by the defendants of that portion of the party-wall (including the arch) which was on their premises would have occasioned the destruction of the whole, and that the same consequence would have followed had the. defendants removed the front and rear walls of their building together with the floors and beams.
Objections were taken b.y the plaintiffs’ counsel generally to the submission of these, questions to the jury,, and to some of them specifically as foreign to, the issues- involved; in the action, but the objections were overruled by the court. The plaintiffs’ counsel proposed that in lieu of the second question which bad been submitted to the jury (viz, whether, if no change had been made, the buildings were fit and safe for occupation as stores, during the ensuing- year), the following- should be. submitted, viz, (i Whether, if both buildings had been undisturbed,, the, division wall would: have been, a sufficient support to Ho. 18 (the plaintiffs’ tenement) for the residue of the plaintiffs’ term, as that store had been occupied during the former part of the term, and whether both buildings, if undisturbed, would have been safe and fit for occupation during the year 1850, with proper precautions, as to-the, business fpr which they were used.”
The court refused to put these questions, and the jury having rendered their-verdict upon the questions submitted to them, the ease was reserved for argument, the judgment directed to be stayed, and the. plaintiffs to apply for such judgment at the general term.
That the questions proposed by the plaintiffs’ counsel to be. submitted to the jury were properly overruled by the judge who tried: the cause, we think, does not admit, of a, doubt.
They embraced in. their scope the right of the defendants to the use and control of the entire building, and if they had been-submitted; and- answered affirmatively, the finding, of the jury could not haye, hqlped the plaintiffs except in the assumption,, which, for, the reasons hereafter assigued. cannot, we think, be *201 supported, that the defendants, the owners of Ko. 20, had no right to disturb their own tenement in any respect during the continuance of the plaintiffs’ lease, if by so doing the safety of the wall would be perilled.
The question moreover involves the assumption, which is equally untenable,'that the defendants’ rights are qualified or limited by the rights of the plaintiffs as lessees in the premises Ko. 18, and are to be construed in reference to the character or nature of the business carried on by them in the premises.
The rights which are in issue are rights pertaining to the freehold only, and are neither enlarged nor limited by any term created therein in respect to the plaintiffs’ lot. If the defendants had a right to take down this wall before the plaintiffs took their lease, it was neither taken away nor curtailed by the creation of a term in Ko. 18, nor by the nature or character of its occupancy, and the plaintiffs, if entitled to any redress for the damages consequent upon the demolition of the wall, must look for it elsewhere than to the defendants.
The plaintiffs claim that their" landlord, Surget, acquired under the conveyances by which he derived his title to the lot and premises, Ko. 18, the exclusive property of the easterly half of the wall in question, and also the easement of support from the residue of said wall, and so much of the said arch as stood upon the lot westerly adjoining Ko. 18, and also from the building on said westerly lot.
Their argument is, that the defendants, as owners of lot Ko. 20, possess no greater rights than Smith (the common source of both titles) possessed after his conveyance of Ko. 18 to Burrowes, and before his conveyance of the other lot to Atkinson; that by his conveyance to Burrowes this right of support passed as an incident necessary to the enjoyment of the grant, and that if Smith could not have used or appropriated the premises Ko, 20, while they remained his own, to the detriment of this right (which the- argument assumes he could not), so neither could his grantees.
The argument assumes, that the right of support passed as an incident to the. right of Burrowes, and, the case is likened to that of the conveyance of a house, with doors and windows opening, upon a vacant lot, also owned by the grantor, and without any *202 reservation in the conveyance of the right to stop the lights, &c., in which it has been held that neither the grantor nor his grantee of the adjoining lot conld, by any erection on such lot, obstruct the plaintiff’s light and air. (12 Mass. 157.) It is also likened to the case of a water privilege, which carries the right of overflowing adjoining premises of the grantor, to the extent necessary to the profitable enjoyment of the privilege purchased, and in the manner in which it existed, and had been used previous to the grant, as a necessary appurtenant to the premises conveyed. (5 Wendell, 523.)
Without discussing the question of how far the principle of these cases is applicable to the one at bar, it is certainly safe to say that the easement claimed, if it exists at all, cannot exist to the extent contended for, that is, to the extent of a right of support from the entire westerly building, Ko. 20. To say that the owner of Ko. 20 is obliged to retain his tenement in its exact condition, however ancient, dilapidated, or useless, merely to furnish a support to the division wall, so long as it suited the caprice of the owner of Ko. 18 to maintain his own premises undisturbed, would be carrying the doctrine of easement to an unreasonable extent, and beyond any known precedent, and finds no support in the language or terms of the conveyances. The utmost that can be claimed is, that the westerly half of the wall itself shall not be removed by the defendants, but shall be left to afford such support to the other half as it is capable of giving, without the aid of the westerly building.
Assuming that, to this extent, the plaintiffs are entitled, what are the rights of the parties if either owner, in the exercise of his right of pulling down or altering his own building, finds that the wall, deprived of its accustomed support from the edifice which he is removing, is incapable of standing by itself, and will inevitably become a ruin ? One half of it stands upon his own ground, and to that extent he is the owner of it in fee, subject, it may be conceded, to the right of support from it in the owner of the other half; but that support, as a matter of fact, ceases the moment he removes his own edifice. Is he to stand still, and from the apprehension of committing a trespass, permit the wall to fall of itself, and become a common ruin to his own and his neighbors’ imminent peril and damage ? It *203 was in this practical view of the subject that the judge submitted the question of damage to the jury, and very properly did so.
How the jury have found as a fact, without qualification, that the removal by the defendants of the front and rear wall of their own building, Ho. 20, with \k& floors and learns, would have occasioned the destruction of the whole wall.
Under such circumstances, can the defendants be said to have committed a trespass by carefully taking it down, instead of permitting it to fall ? We think not:—if it was a trespass, it was a technical one merely ; it was damnum absque injuriú / it was a trespass which a prudent and humane regard for life and property, and the very necessity of the case, required the defendants to commit, if the plaintiffs refused their assent to it, and for which the latter can have no claim for damages.
The same rule would apply if this easement of support in the westerly half of the wall did not exist (which is one of the aspects in which the case is presented to us), and the owner of the easterly half should refuse to unite in taking it down. ‘ The necessity of the case would furnish a law of itself; and if the defendants found that by taking down their own half of the wall, the destruction of the other was inevitable, they would be justified, in such absence of assent from the adjoining owner, in taking down the whole, doing it carefully and with the least possible disturbance of the plaintiff’s occupation, and rebuilding the wall at the earliest practicable moment.
We also think the finding of the jury conclusive upon the case, in the other aspect in which it has been presented to us— that of a prescriptive right in each house to the support of the other. They have found that the condition of the arch and party-wall between the buildings in question was so dangerous, on the 1st of May, 1850 (the period immediately preceding its removal), that a just regard to the safety of life and property rendered their removal necessary.
This finding is broad enough to embrace the idea of a public nuisance, for the maintenance of which there can be no prescriptive right—(Viner’s Ab. Tit. Prescription, E., 9 Wend., 315)—and the public authorities would, on such a state of facts, have been justified in interfering. This is substantially admitted by the plaintiff’s counsel. It is said, however, that *204 the right of the defendants to interfere as abaters of the nuisance, was limited to the point of actual safety, that this eonfined them to the wall above the arch, and that if they had removed that only, the plaintiff’s store, which did not reach higher than the arch itself, would have been undisturbed.
As we have already shewn, the defendant’s rights are not to be measured by the nature or extent of the plaintiff’s occupation, but apart from this Consideration the pleadings show that the plaintiffs were lessees’ of the entire store-, and a part of their alleged damage- arises from the loss of the tenants of the upper lofts.
The question, therefore, cannot be divided, ñor a different rule invoked for one part of the premises from that which is1 applicable' to another. The finding of the jury Covers' the arch-as well as the wall,- and if the defendants had a right to remove •the one, they had also to remove the Other.
We think they had the right, under this finding of the jury, to remove both. (Viner’s Ab., Tit. Nuisance. S. T. W.)
We are, therefore, of opinion that, in either aspect of the plaintiffs’ claim, the finding of the jury is conclusive against a right of recovery in this action, and that the defendants Were justified, in taking down the entire- wall, including the arch on which it rested-, and are, therefore, entitled to judgment, and that the complaint be dismissed. The defendants were bound, in removing the wall, to do it carefully and prudently, and there is no pretence that they were negligent in- this respect. The whole objection is to their right to interfere with it at all.
We do not deem it necessary to consider the case on the hypothesis of the wall being a party-wall, though it would be somewhat difficult in that aspect of it to distinguish it from the case of Campbell v. Mesier (4 J. Ch. 334).
We have looked- into the several exceptions taken to the ruling of the judge on the trial, and are- of opinion that they are not well founded;
Judgment must be-, for the defendants as-- above.
Bosworth, J.
The.plaintiffs’ lessor owned in fee to the- centre of the division wall, so much of it as stood upon lot Ho. 18, and the residue of the wall was the property of-the-defendants.
*205 The two buildings had been converted into stores, and the passage-way blocked up before either of these parties became owners of either of their lots.
The arch which was built to sustain the division wall bad become unable to support it, A girder had been run under the crown of the arch, supported its whole length by locust posts, for the purpose of sustaining the division wait.
The mere fact that the two buildings were originally so constructed that the division wall was supported by an arch, one foot of which was wholly on one lot and the other foot exclusively on the other, did not give to the plaintiffs’ lessor or to the defendants, by force of the conveyances under which they acquired title, an absolute*right to have the division wall of any two buildings that might at any subsequent time he erected upon the lots so supported.
Whether it gave the right to either party,, whenever the decay of the old buildings should render the construction of new ones necessary, to require the one first, rebuilding to construct a division wall equally upon each lot, to he used in common as a party-wall, or gave the one first rebuilding a right to place half of the width of the wall on the adjoining lot, it is unnecessary to decide,
It is conceded that when the defendants rebuilt they built their easterly wall upon the two lots, one half of its width on each, and this wall is used as a party-wall to support the beams of the building on either-lot.
Each party has the beams of the building, that is on his own lot, now supported at one end by the new wall, the centre of which is the dividing line, between the two lots.
Had the defendants a right to remove their own building, and the part of the wall standing on their own lot (on giving notice to the owner and occupants of the other), in a reasonably careful and skilful manner, without being liable to an action for the inevitable incidental inconvenience and loss resulting to the owner- and occupant of the adjoining building by reason of its enjoyment being temporarily less valuable f
The facts as found by the j ury are, that the condition of the arch and party-wall was so. dangerous that a just regard to the safety of life and property rendered their removal necessary. *206 That the buildings were not fit and safe for occupation as stores during the then ensuing year, even if no change had been made; and their condition was such that, in the exercise of ordinary prudence, it was expedient to remove them.
■ Such a state of facts rendered the rebuilding by the defendants a matter of strict right, and the removal of the division wall a matter of duty to those whose personal safety might be endangered by allowing it to stand until it might fall by the pressure it could no longer resist.
The inconvenience of the repair was inevitable, and as small and temporary as the nature of the case admitted.
If the principle is to obtain that such a wall cannot be removed, by the owner of one lot, tcwrebuild, so long as it supports the adjoining building for any use to which for the time being it may be put, there will be substantially an end to all improvements in those parts of the city which have long been covered with buildings. Such a principle,does not' seem to be founded in reason, would be inequitable and injurious in its operation, and presents no considerations recommending it to favor. It %is in direct conflict with the rule, adjudged and applied in Campbell v. Mesier (4 J. Ch. R. 334), and is not supported by any authority which should control the judgment of the court.
I think the facts found by the jury, in connexion with the other undisputed facts of the case, entitle the defendants to a judgment dismissing the complaint.
The Ohief-Justice concurred. Complaint dismissed with costs.