Peck, J.
The declaration discloses that the defendant, being desirous to remove the building upon his lot, in order to erect thereon one better adapted to its increased value, notified the plaintiff of his intention to take down that part of the division wall which stood upon his ground, and upon the plaintiff’s refusal to suffer or permit such removal, proceeded to take the same down, using due and proper care to prevent injury to that part of the wall which stood upon the lot of the plaintiff. This the defendant, as owner in foe of the ground, had an undoubted right to do, unless he was precluded by the other facts sot forth in the declaration. These facts are, the agreement to construct and the actual construction *427 of a common partition wall *for the support of both houses, by the grantors of the plaintiff and defendant, on the line of their respective lots, in April, 1831, and the continued occupancy and common user of such partition wall, by them and their said grantees, up to May, 1852, when the defendant, after notice, removed his portion of the wall. The agreement did not contain any express stipulation as to the continuance or termination of such joint use of the wall; but the plaintiff insists, that it conferred upon him a right to the use of the entire wall for the support of his building for all time, or at least, “ until the wall should become unfit for its original purpose,” and that neither party could take down his part without the consent of the other.
We have not seen any English case which expressly determines that, in a case like the present, an action could be maintained by the plaintiff, though it is intimated by Littledalo, J., in Wiltshire v. Sifford, 17 E. C. L. 262, that neither party would have the right to pull the wall down. But we have been referred to several cases in New York, as to “party-walls,” said to be decisive of the point. Strictly speaking, a “party-wall” is one built or supposed to have been built at joint expense and upon ground owned in common, so that each adjoining proprietor has an undivided interest in every part of the wall and the ground on which it stands. Gale & Whately on Easements, 201. Though the term is often applied to designate a mere division wall; and the statutes, in England and Now York, denominate a wall built at joint expense and upon the line of two adjoining proprietors, a party-wall.
“ Rights to a party-wall may arise in consequence of the special agreement of the party, and in that event, whatever are the provisions of the contract they govern. In the absence of any agreement, party-walls are generally regulated by the acts of the local legislatures.” 2 Bouv. Inst. 177, 178.
We have not in this state any act regulating party-walls, *and consequently the rights and liabilities of the parties in this case, must depend upon the provisions of the contract between them and the principles of law applicable to those provisions.
The cases mainly relied on by the counsel for the jilaintiff to sustain a recovery in this case are: Partridge et al. v. Gilbert et. al., 3 Duer, 184; S. C., 15 N. Y. 601; Eno v. Del Vecchio, 4 Duer, 53; SC., 6 Duer, 17; and Webster v. Stevens, 5 Duer, 553.
The cases cited from 3, 4, and 6 Duer, are all cases in which the *428 •owner of two adjoining lots built a house upon each,.with a common partition wall on the line of the two lots, and subsequently conveyed each lot to different purchasers, between whom the. controversy arose. In such a case, the fight to the use of the cutiré partition wall would pass by the deed to each grantee as an appurtenance to the house conveyed to him, and is therefore plainly distinguishable from the case before us.
The case cited from 5 Duer, however, is in some respects like the case at bar. In that case, a division wall was erected by two several lessees of lots, upon the line of their respective lots, for the support of houses erected by them respectively, and without any express stipulation as to the continued use; but in that case the-suit was brought some time after the expiration of the leases, by and against subsequent grantees in fee simple of the lessor, on the ground that the easement created by the lessees still attached to the buildings erected by them; and the case was finally disposed of in favor of the defendant, who had removed the wall, for the reason that the easement created by the lessees could not affect the reversioner. The court, however, do say, that “when the owners of adjoining lots construct, by mutual consent, a wall partly on the lot of each, for the common support of the buildings erected by them on their respective lots, and the same is used as a wall for common support for twenty years, such wall is strictly a party-wall, within the legal meaning of that *tercn, and the owner of each has an easement on the portion of the wall standing on his neighbor’s land for its support; and that neither could, during the term common to both, claim a right to interfere with the easement of the other in the wall which they had by common consent erected as a jjartywall between them.” The judge delivering the opinion says that the proposition is undoubtedly true, but cites no authority. He terms the right thus acquired “ an easement,” and seems to base it in part upon the contract, and in part upon the length of time it has been enjoyed. Mere length of time, as such, could not confer the right, because there could not be, in the nature of things, an adverse possession in the case supposed; and for a similar reason, there being a unity of possession between the dominant and servient tenements, twenty years of common use and enjoyment could not create an easement by prescription. G-ale & Whatoly on Easements, 86. If any easement was thereby created, it was an “easement of necessity;” that is, one implied by law to carry into effect the in *429 tention of the parties. Ib. 53. And this seems to be the view of Shankland, J., in 15 N. Y. 607. The statutes of New York, as to-party-walls, may or may not have influenced the decision, but it is clear that the question of easement or no easement must, in this state, depend solely upon the proper construction of the contract set forth in the amended declaration. The agreement as to the wall, stated in the declaration, is, that the parties, being about to-erect dwelling-houses upon their respective lots, agreed to and did build a partition wall for the support of-both houses, one-half thereof being upon each lot. The parties made no express stipulation as-to the duration of the joint use and occupancy of the partition wall, as they well might and perhaps ought to have done. Can the-court now do it for them; and if so, how long is it to endure,-, and when is it to terminate? Must there be mutual consent, or ruinous decay of the wall, before it is taken down, or may it be ter*minated by either, if his interest or convenience require it ? On the one hand it may said, that the wall was built for tbe support of the two houses, and the parties must have designed it to-remain, so long as either of the houses required its support, and that having been built by mutual consent, and money expended on the faith of its permanency, neither party should arbitrarily terminate it; while on the other, it may also be said, that it was-built for the mutual benefit and convenience of both at the time, and in the absence of express stipulation, should remain no longer than their mutual benefit may require; that it was erected under the state of things then existing, and should not be insisted on when the circumstances are entirely changed; that when the contract was made, the ground was suited only for ordinary dwellings, and should be terminated, if either party desire it, whenever fashion or expanded commerce, may require its appropriation to-marble palaces or extended warehouses. We think, however, that the contract, like all others, is to receive a reasonable construction to effect the reasonable intent of the parties deducible from the-words employed, as applied to the circumstances surrounding the contracting parties. If it is unreasonable to confer upon either party the right to arbitrarily terminate it at any time, it 'is equally unreasonable to permit either, from sheer obstinacy or mere caprice,, to insist upon its continuance under a material change of the circumstances. In agreeing to construct tbe wall, the parties probably did not look to the' future, but only to the present. Their *430 arrangement had. reference to the immediate use, rather than to the future availability of their properties, or the continued use would have been matter of express agreement, and not left to mere ■construction. The city, then comparatively in its infancy, was rapidly advancing to the material prosperity it now enjoys, and we can scarcely infer that either party supposed he was creating a permanent incumbrance upon his lot, or a hindrance to its appropriation to other uses, if the rising *fortunes of the city •should render the change desirable. The declaration shows that the wall was used and enjoyed by the parties for more than twenty-one years; that the improvements by that time had become wholly •unsuited to the increased value and capabilities of the property. And we can not but think, that the defendant, after reasonable notice to the plaintiff, might, under the contract, remove his portion of the wall, using due and proper care to prevent injury to the plaintiff, in order to conform his improvements to the changes which time had wrought in the value and availability of the property. We do not hold that the defendant had the right at all times, after building the wall in 1831, to take his part down without the consent of the plaintiff. That, in our judgment, would be as unreasonable as the construction for which the plaintiff contends. All we do hold is, that the facts stated in the declaration, •do not constitute a cause of action. The time during which the ■alleged easement was enjoyed by the plaintiff, does not confer a right to its future enjoyment, because that enjoyment was in no •sense adverse, and because there was, during the entire period, a unity of possession in the dominant and servient estates. Again, a title by prescription, being a right or authority over the property of another, must be specially pleaded (Stephens on Pleading, 304, et se<p), which has not been attempted in this case. But -again, if a title by prescription was averred as against the defend•ant, and the mere fact of twenty-one years’ enjoyment was relied •on to support it, we, as at present advised, should probably hold, that such an unbending rule is not adapted to the circumstances ■and existing state of things in this country, as has been repeatedly held in this country in regard to the prescription of the English law as to ancient lights ; and as to which, see Parker v. Edgerton & Foote, 19 Wend. 318; Cherry v. Stein et al., 11 Maryland, 7; 33 Penn. 369; 2 Comst. 597; 5 Richardson, 323.
It is said by Bronson, J., in 19 Wend, supra, that the *pre *431 sumption of the grant of an easement, arising from twenty years’ ■enjoyment, like the presumption of payment of a bond, etc., is not a conclusive presumption, but may be rebutted. Here, we have the origin of the right and the precise terms by which it was created, and under which it was enjoyed; and, therefore, if this be correct, the claim to its continuance, would depend upon a fair and reasonable construction of those terms, and the result would still be the same.
Demurrer to amended declaration sustained, and cause remanded.
Brinkerhoee, C. J., and Scott, Sutliee, and G-holson, JJ., concurred.