## JACKSON *v.* TRULLINGER.

### EASEMENT—HOW ACQUIRED.

The right to overflow adjoining lands, like the right of way across the lands of another, is an easement, and will pass by a conveyance as an appurtenant, when agreeing in nature and quality with the principal thing granted.

### MILL PROPERTY—WATER POWER.

By the grant of a mill "with the appurtenances," the dam and all the privileges of flowing which are essential to the enjoyment of the mill and head of water pass, and this is true without the word "appurtenances," because the incident goes with the principal thing—a principle said to be especially applicable to water privileges, in grants of mills and factories dependent on a flow of water for motive power.

### CONVEYANCE BY METES AND BOUNDS.

Hence it has often been held that a conveyance by metes and bounds, of a mill-site, carries the right to take and convey and discharge water from and across land not within the boundaries given by the deed, for the reason that the power so to do is necessary to the full enjoyment of the property specifically conveyed.

These decisions rest on the principle that the grantor conveys by his deed, as an appurtenance, whatever he has the power to grant which is practically annexed to the granted premises, at the time of the grant, and is necessary to their enjoyment in the condition of the estate at the time.

#### APPURTENANCES AND INCIDENTS.

By the conveyance of certain real estate known as the Centreville mill property, by metes and bounds, with the privileges and appurtenances *thereto belonging*, all privileges of flowing which were necessary to the enjoyment of the mills and head of water, passed as incidents and appurtenances, with the premises conveyed, so far as they legally existed in the grantor at the time of his conveyance.

#### COVENANTS—BREACH OF.

Nor is this construction of the deed inconsistent with the intention of the parties, as disclosed by the evidence, as it appears that no such right of flowage in adjoining lands, as alleged, was legally appurtenant to the premises conveyed, or was necessary to the useful operation of the mill property, in the manner in which it had existed, and had been used previous to the grant, and there was consequently no breach of the covenants.

APPEAL from Washington. The facts are stated in the opinion.

*Caples & Mulkey and Geo. W. Yocum*, for appellant.

It is not essential that by the terms or tenor of the deed the right to maintain the dam at the height of nine feet shall be expressly mentioned. The fact that it was "mill property" that was sold and conveyed, carries with it every right that is essential to the beneficial enjoyment of the property. The covenants extend not only to the land itself, but to all such things as should be properly appurtenant to it, and pass by a conveyance of the freehold. (*Powers* v. *Dennison*, 30 Vermont, 752; *Van Wagner* v. *Van Nostrand*, 19 Iowa, 427; *West* v. *Stewart*, 7 Barr., [Pa.] 122.

Everything necessary to the enjoyment of the property passed by the deed. (Wash. Real Property, 3d Ed., 340.; *Wickersham* v. *Bills*, 8 Ind., 387; *Brugger* v. *Butler*, 5 Or., 450; *New Ipswich Factory* v. *Bachelder*, 3 N. H., 190.)

*Thomas H. Tongue and B. Killin*, for respondent.

An easement which is extinct, or which has no legal exist-

ence, though used *de facto*, does not pass an appurtenance. (*Plant* v. *James*, 5 Barn. and Adol., 791; *Kent* v. *Wait*, 10 Pick., 138; *Patterson* v. *Hull*, 9 Cow., 747; *Manning* v. *Smith*, 5 Cow., 289.) The covenant of warranty is not broader than the grant. Nothing is warranted which is not granted. (3 Wash. R. P., 475.)

A grant of a thing will include whatever the grantor had power to convey which is reasonably necessary to the enjoyment of the thing granted. A grant of a house with appurtenances will pass a pipe or conduit by which water is conveyed to it, but this depends upon whether the grantor owns the conduit. (*Bruce* v. *Yale*, 4 Allen, 393; *Philbrick* v. *Erving*, 97 Mass., 133; Angell on Water Courses, section 153, note 1.)

By the Court, LORD, C. J.:

This is a suit to foreclose a mortgage given by defendants to secure the payment of a promissory note, executed by John C. Trullinger to the plaintiff, on the 28th day of November, 1870, with interest. The defendants admit the execution of the note and mortgage, but deny that any payments have been made on the note sued on.

For a separate answer the defendants allege that the note and mortgage were given as a part of the purchase price of the property described in the mortgage, and further allege, substantially: That on the 28th day of November, 1870, the plaintiff conveyed by deed to the defendant, John C. Trullinger, in consideration of $6,000, certain mill property and real estate, set out in plaintiff's mortgage, and description in said deed, as follows to wit: "The following described real estate in the county of Washington, state of Oregon, known as the Centreville Mill Company, and bounded as follows, to wit: (Here follows by metes and bounds the boundaries of 7 25-100 acres of land.) To have and to hold the above granted premises with the privileges and appurtenances *thereto belonging*, to the said J. C. Trullinger, his heirs and assigns, to their use and behoof for ever. And I, the said

Ulysses Jackson, for myself and for my heirs, executors and administrators, do covenant with the said John C. Trullinger, his heirs and assigns, that I am lawfully seized in fee of the *afore granted* premises, that they are free from all incumbrances, that I have good right to sell and convey the same to the said J. C. Trullinger as aforesaid; and that I will, and my heirs, executors and administrators shall, warrant and defend the same to the said John C. Trullinger, his heirs and assigns forever, against the lawful claims and demands of all persons."

That at the date of said conveyance defendants allege that there was on said premises a saw-mill and grist-mill, operated by water, in a creek running through said land; that in order to furnish necessary water, a dam ten feet high was maintained across said creek, and that said dam caused the waters of the creek to flow back upon and overflow about three acres of land, owned by one J. W. Marsh; that about eight years after said conveyance, Marsh, by a judgment duly obtained against defendant, J. C. Trullinger, compelled him to lower said dam five feet, and to pay $250 for damages, caused by said dam, etc., and that by these proceedings defendant was damaged in the sum of $10,000. Although the answer contains three separate defenses, only two were relied upon at the argument. These were, in brief: First. That at the time of making said conveyance, plaintiff falsely represented that he had the right to maintain said dam ten feet high and to keep and maintain a ten-foot head of water in said dam, and a right to overflow about three acres of land owned by the said J. W. Marsh; and, Second. That plaintiff expressly covenanted with the defendant that he had such rights; that the same were appendant and appurtenant to said property, were necessary to propel the machinery of said mills at the time of said purchase and conveyance, and that without such dam, head of water, and rights of flowage, said mills could not be made useful, or be beneficially enjoyed. At the proper time, and when we come to examine the evidence, it will have reference to and include

both of these defenses:    At present our inquiry must be confined to a construction of this grant, and in such case, the court will take into consideration the object which the parties had in view, and the nature of the subject matter of the grant.    What, then, does the deed in question purport on its face to convey?    Plainly, not merely to define a specific piece of land by metes and bounds,  or to carve out of a larger area a specific piece of ground, but to convey certain "real estate" which is known as the "Centreville Mills Property."    Land solely is not the subject matter of the grant, but "real estate" which, from the uses to which it has been subjected, and the character in which it has been enjoyed, is known and designated as the " Centreville Mill Property."    It is as such "real estate" having the qualities, or attributes of mill property, that is the principal thing granted, and constitutes the subject matter of the conveyance.    This is the "above granted premises," referred to in the *habendum,* which the defendant, John C. Trullinger, was to have and to hold, with the privileges and appurtenances thereto belonging.    Such, then, being the subject matter of the grant, and it being conceded that the covenants of warranty are co-extensive with the subject matter of the grant—what would pass by the terms "with the privileges and appurtenances thereto belonging?" It may be observed that there are some things which pass by a conveyance of lands as incidents appendant and appurtenant thereto, although not mentioned therein.    But regularly "nothing can be appendant and appurtenant unless it agrees in nature and quality with the things whereto it is appendant and appurtenant."    (Bac. A., 6, Little Grant L., 4.)

An easement is defined to be the right which one man has to use the land of another for a specific purpose.    (3 Kent. Com., 528.)    The right to overflow adjoining lands, like the right of way across the lands of another, is an easement, and will pass by a conveyance as an appurtenant, when agreeing in nature and quality with the principal thing granted. (*Wilcoxen* v. *McGhee*, 12 Ill., 386.)

The maxim of the law is that whoever grants a thing, is supposed, also, tacitly, to grant that, without which, the grant would be of no avail. Where the principal thing is granted, the incident shall pass. (Co. Litt., 152.)

By the grant of a mill, or the grant of land with the mill thereon, the waters, flood-gates, and the like, which are of necessary use to the mill, pass as incident to the principal subjects of the grant. (Shepherd's Touchstone, 989; 4 Kent's Com.)

Again, by another text writer, it is said that by a grant of a mill, "with the appurtenances," the dam and all the privileges of flowing which are necessary to the full enjoyment of the mill and head of water, will pass. (Angel on Water Courses, sec. 358.) And further, that the word "appurtenances" is not necessary to the conveyance of the easement or water right in such cases, because the incident goes with the principal thing, and that this principle is especially applicable to water privileges in grants of mills and factories dependent on a flow of water for motive power. (Secs. 153 a, 153 b, 158, 166.)

Now let us examine some of the reported cases and ascertain the extent to which this principle is applied. In *Blaine's Lessee* v. *Chambers*, 1 Serg. and Rawle, 169, the court decided that " a grist-mill and appurtenances " carried with it what was actually used as an appurtenant by the testator in his life time, and Yeates, J., said, " by these words, everything necessary for the full and free enjoyment of the grist-mill, and requisite for the support of the establishment, such as a dam, water, the race leading to the mill, a proper portion of ground before the mill for the loading and unloading of wagons, horses, etc., as used by the testator, would pass, for without these appurtenances the grist-mill could not be worked."

In *Pickering* v. *Staples*, 5 Serg. and Rawle, 107, Chief Justice Tilgman says: " The water right was appurtenant to the mill and passed by the word appurtenances." In *Stricklen* v. *Todd*, 10 Serg. and Rawle, 63, it was decided that by a conveyance of a mill, the whole right of water enjoyed by the

grantor as necessary to its use, passes along with it as a necessary incident, and this the grantor cannot, by the conveyance of another lot of ground through which the stream passes, impair the right to use the water already vested in the first grantee. (*Swartz* v. *Swartz*, 4 Penn. St., 354.)

In *Blake* v. *Clark*, 6 Greenleaf, 436, the court decided, that the term " mill " may embrace the free use of the head of water existing at the time of the conveyance, as also a right of way, or any other easement which has been used with the mill, and which is necessary for its enjoyment.

In *Taylor* v. *Hampton*, 4 McCord, 96, it was held, that the pond was an appurtenance of the mill, and the purchaser had a right to keep up the water to the height to which it was raised at the time he purchased, although the consequences should be to overflow the grantor's land.

In *Gilson* v. *Brockway*, 8 N. H., 465, the description used in the conveyance was: "A certain tenement, to wit: one-half of a corn-mill, situated in Washington, in the county of Cheshire, in lot No. 1, with all the privileges thereto belonging," and the court say: " The design was, without doubt, to pass, under the phrase, ' a certain tenement, being one-half of a corn-mill,' the land on which the same was situated, together with that portion of the water privileges which was essential to the use of the mill, and such is the proper legal effect of the terms made use of." And this case was cited and approved in *Sheets* v. *Selden's lessee*, 2 Wall., [U. S.] 188, as to the effect of the description in the conveyance.

In *Whitney* v. *Olney, et al.*, 3 Mason, 280, Judge Story said: " The good sense of the doctrine on this subject is, that under the grant of a thing, whatever is parcel of it, or of the essence of it, or necessary to its beneficial use and enjoyment, or in common intendment included in it, passes to the grantee."

In *Sparks* v. *Hess*, 15 Cal., 197, the court held the true doctrine to be, that everything essential to the beneficial use and enjoyment of the property granted, is to be considered,

in the absence of language indicating a different intention on the part of the grantor, as passing with it, either as parcel thereof or appurtenant thereto. (Angell on Water Courses, sec. 165.)

In *Tabor* v. *Bradley*, 18 N. Y., 113, the court say: " So this conveyance, in terms, of a ' mill,' or ' mill race,' or ' privileges,' would undoubtedly pass the right to flow sufficient to raise the necessary head of water to carry the mill," although that was a case in which it was held, where conveyances on their face purport to convey only the land within the boundaries described, nothing more than the lands are carried by them; but Judge Pratt, in delivering the opinion of the court, says: " There is no allusion to any mill or water rights or privileges in the conveyances," and this is noted by Judge Folger, in *Voorhees* v. *Burchard*, 55 N. Y., 106, as an important feature of that case, in which he says: " It seems to be conceded that a deed purporting to convey by metes and bounds, may be legally construed, in the light of surrounding circumstances, to include also privileges annexed to or connected with the main subject of the grant."

Again he says: " It has often been held that a conveyance by metes and bounds of a mill-site, carries the right to take and convey and discharge water from and across lands not within the boundaries given by the deed, for the reason that the power so to do is necessary to the full enjoyment of the property specifically conveyed." But in the majority, if not in all, these cases, it will be noticed that the easement either legally existed in the grantor, and passed as an appurtenant with the principal thing conveyed, or was connected with and belonged to other lands of the grantor, and was necessary to the beneficial use and enjoyment of the premises conveyed. The principle of law is, that where a thing is granted the grant implies a right to all the means of enjoying it, so far as the grantor was possessed of those means. (1 Saund., 322, 323.)

Hence, it is held, when mill property is granted, that such

right of flowage as is legally appurtenant to the premises, or exists in other lands of the grantor, and is necessary to the useful operation of the mills, passes as an appurtenant with the principal thing granted, without being specially named in the deed. (See also *Philbrick* v. *Ewing*, 97 Mass., 134; *Rackley* v. *Sprague*, 17 Mass., 281; *Dunkler* v. *Wilton R. R. Co.*, 4 Fost., [N. H.] 489; *New Ipswick Factory* v. *Bacheldor*, 3 N. H., 190; *Oakley* v. *Stanley*, 5 Wend., 523; *Voorhees* v. *Burchard*, 55 N. Y., 99; *Coolidge* v. *Hagar*, 43 Vt., 1.)

In *Philbrick* v. *Ewing*, *supra*, Judge Hoar stated the rule to be, " that the grantor conveys by his deed, as an appurtenance, whatever he has the power to grant which is practically annexed to the grantor's premises at the time of the grant, and is necessary to their enjoyment in the condition of the estate at that time." And further, that an easement, " where it is not expressly described in the conveyance, must actually belong to the estate conveyed, in order to pass by implication."

In *Swazey* v. *Brooks*, 32 Vt., 483, it was held, that the word *appurtenances* in the *habendum* of a deed, when none are specified, will not be construed to convey anything except what was legally appurtenant to the lands in the hands of the grantor, and therefore will not be extended so as to convey an easement in the land of another, etc., unless accompanied by proper words describing it, and showing the intention of the grantor to pass it.

And in *Bliss* v. *Kennedy*, 43 Ill., 71, it was decided, that where a factory, and the land on which it stood, with the appurtenances, were conveyed, the factory being the subject matter of the grant, all that belonged to the tract conveyed, and over which the grantor had dominion, passed by his deed under the term " appurtenances," and nothing more; that " he cannot be held by his deed to have sold and conveyed anything but the land and factory specified in it, and the appurtenances to that land and factory then belonging." ·

It must, therefore, be evident, that by the conveyance of certain real estate, known as the Centreville Mill Property,

by metes and bounds, with its privileges and appurtenances thereto belonging, all privileges of flowing which were necessary to the full enjoyment of the mills and head of water, passed as incidents and appurtenances with the premises conveyed so far as they legally existed in the grantor at the time of his conveyance. Nor is this construction of the deed inconsistent with the intention of the parties as disclosed by the evidence, as it appears that no such right of flowage in adjoining lands, as alleged in the separate defenses, was legally appurtenant to the premises conveyed, or was necessary to the useful operation of the mill property in the manner in which it had existed and had been used previous to the grant, and there was consequently no breach of the covenant.

A brief examination of the evidence will make this clear. It appears from the evidence that the mills were constructed by J. B. Jackson, sometime in the year 1858, and operated by him until his death in the year 1868, when his brother, the plaintiff in this suit, succeeded to the management and operation of the mill property as administrator of the estate of J. B. Jackson, deceased, until some time in July, 1870, and then, as owner, until some time in November, 1870, when he sold the property in question to the defendant.

It seems at the time the mills were built and first operated, there was another saw-mill further up the creek, that it was thought might be damaged by the head of water necessary to run the Centreville mills, and as an experiment the head of water was raised eight to ten feet high to see what effect it would produce on the mill above. That experiment having demonstrated that no injury would result to it, and six to seven feet of head being all that it was supposed would be necessary to operate the mills, only a head of water of that height was used when the mill was first operated. But in the course of a year or so, J. W. Marsh complained of injury to his land from the backwater, and the head of water then being more than was essential or necessary to operate the mills, the dam was lowered to a five-foot head, and from that time until

the death of J. B. Jackson, as well as after his death until the sale and conveyance of the mill property by the plaintiff to the defendant, a five-foot head of water was all that was used to operate the mills. Moreover, the testimony indicates that at the time of the purchase of the property, there was not to exceed a four-foot head of water in the dam. Nor was there up to this time, so far as the testimony discloses, any complaint from, or any injury done to, or overflow of the lands of, J. W. Marsh, produced by the head of water maintained and necessary to operate the mills.

Nor, at the time of the sale, did the plaintiff claim to have any right of flowage upon the land of J. W. Marsh, nor was his land overflowed by the head of water maintained and necessary to operate the mills successfully. He had a right to flow the land of John Marsh, but for this he had a deed, and referred the defendant to it. The truth is, and the evidence abundantly discloses it, that the defendant is, and was at the time of the purchase of the property, a man of large mill experience, and of a good deal more than ordinary intelligence in respect to such matters, and that he had not only inquired into and examined the records as to the extent of the water privileges, but took the further precaution to employ an able attorney to advise him of and secure all his rights in the subject matter of the sale.

The purchase price paid for the mills was six thousand dollars. There is no doubt that much of the machinery was old and not of the latest improvements, and that the property was some out of repair. It is disclosed, however, by the evidence, that soon after his purchase the defendant proceeded to make a great many improvements, to put in extra burrs in the flouring-mill and saws in the saw-mill, and generally to improve and increase the machinery of the mills. The result was that in order to procure the extra power required to operate the increased machinery, the defendant raised the dam three or four feet higher than it ever had been maintained by the plaintiff or J. B. Jackson.

According to the testimony of A. S. Dudley, who operated the mills for three years after the purchase, the mills might have been successfully run, even with the increased machinery, with a five-foot head of water. He says: " It could be run with profit at that head, but there would be more profit with an eight-foot head of water than a five-foot head." The result produced by this raising of the dam and head of water was to cause the waters to overflow the lands of J. W. Marsh. Nearly six years after the purchase—in October, 1876—J. W. Marsh brought suit against the defendant, Trullinger, and among other things, alleged in his complaint that "during the year 1870, defendant raised said dam higher than it had been before," and that since said time had increased the height of said dam to his damage, etc., and obtained a judgment and decree that said dam be taken down, or so much thereof as would reduce the height of said dam sufficiently to withdraw the backwater from Marsh's land, and to a hight not exceeding five feet above low water mark. It is clear, from the testimony, and particularly the defendant Trullinger's, that at the time that suit was instituted, he was operating and running the mill with a ten or twelve foot head of water, and that the overflow of Marsh's land was occasioned by this increased head of water.

It is equally clear, also, that not more than a five-foot head of water was maintained at the time of the purchase, and that the lands of J. W. Marsh were not overflowed in consequence of it, and that neither the plaintiff or J. B. Jackson were accustomed to raise more than a five-foot head of water, previous to the grant, to successfully operate the mills.

Some estimate of the improvements made on this property and of the defendant Trullinger's estimate of the value of the property, may be formed by an insurance he effected, in which he made the statement that the mills, exclusive of land or water, or water rights, were worth from $14,000 to $17,000. The insurance of the mills, too, was effected after the Marsh judgment, in the fall of 1878, and were destroyed by fire in

the April following.    But it is not necessary to pursue the subject further.    We are satisfied from our examination of the evidence that the plaintiff made no fraudulent representations in respect to this property, and that there was no breach of his covenants.

From these views it follows that the decree of the court below is affirmed.

Decree affirmed.