WILLIAM W. SCRIVER and JOHN W. ROBERTS, Respondents, v. ELI B. SMITH, Appellant.

*Covenant of warranty — what constitutes a breach of it.*

The defendant conveyed to the plaintiffs by a deed containing a covenant of warranty certain premises upon which was a grist and flouring mill, which had water-power and mill privileges appurtenant thereto. One Douglass owned the premises next below those so conveyed and had erected a dam thereon. At the time the deed was given, this dam did not back the water upon the premises conveyed to the plaintiffs, but Douglass had, and afterwards exercised, a right to raise the dam eight and one-half inches higher, whereby the water was thrown back upon the plaintiffs' premises, injuring their mill privileges and the foundation of their buildings and overflowing a portion of their land.

*Held,* that the plaintiffs were entitled to recover the damages so sustained, in an action against the defendant, for a breach of the covenant of warranty contained in the deed. (Learned, P. J., dissenting.)

APPEAL from an interlocutory judgment in favor of the plaintiffs, entered upon an order overruling a demurrer to the complaint.

The complaint sets up that on the 25th day of March, 1875, the defendant conveyed to the plaintiffs in fee a certain parcel of land which contained a water-power and grist mill, with the water-power and mill privileges appurtenant thereto. It avers that the value of the premises consisted almost wholly in their use for such purposes, and that the premises were bought by plaintiffs for such purposes, as was known to defendant.

It sets forth a covenant of warranty contained in the deed, the latter being attached to the complaint. The covenant is in the usual form. The grantor covenants " that the premises thus conveyed in the quiet and peaceable possession of the parties of the second part " he will forever warrant, etc.

The plaintiffs aver that they have not been permitted peaceably to occupy and enjoy, but on the contrary that one Douglass, who, at the time of the making of the said deed and continually from thence until the time of the eviction was the lawful owner of a certain mill dam on the river 'next below the premises, had a right to raise the dam eight and one-half inches above the height at which it was maintained at the time of the conveyances. That he did subsequently so raise the dam as he had a right to do, without permission of plaintiffs, and did thereby cause the water of said river to set back upon the premises so conveyed and to flood a portion thereof and to impede the discharge of water from plaintiffs' wheel pit and raceway, and the operation of plaintiffs' mill, so as to reduce the mill's working capacity, and the earnings thereof, and to cause its foundations to settle, and to evict the plaintiffs from a portion of said premises and deprive them of the use and enjoyment thereof.

The complaint further alleged that an action had been brought by the plaintiffs at the defendant's request, against Douglass to test his right to increase the height of the dam in which he recovered a judgment establishing his right so to maintain the said dam.

To this complaint the defendant demurred, on the ground that it did not state facts sufficient to constitute a cause of action.

*W. P. Cantwell,* for the appellant.

*Edward E. James,* for the respondents.

BOARDMAN, J. :

Neither *Adams* v. *Conover* (87 N. Y., 422), nor *Green* v. *Collins* (86 id., 246), seem to me strictly to apply to the case before us. One Douglass here owned a water-power, dam, etc., next below the premises conveyed by defendant to plaintiffs by warranty deed. At the time such deed was given the dam of Douglass did not back water upon the premises described in the deed, but the right existed, and was afterwards exercised by Douglass, to raise his dam ten inches, whereby the water of the river was thrown back upon said premises. Was the exercise by Douglass of this conceded right such an act as gave to plaintiffs the right of action under the covenant of warranty, and for quiet enjoyment contained in defendant's deed to them.

It is not whether the plaintiffs took an apparent easement to discharge a sewer upon a stranger to the deed as in *Green* v. *Collins*, nor whether they took an apparent easement to maintain water upon the lands of a stranger to the deed. The question here presented is whether the plaintiffs are entitled to have, possess and enjoy what they bought. The lands are described in the deed by metes and bounds. The vendor has given the common covenants of warranty, and for quiet and peaceable possession of the premises conveyed. The adjoining owner below establishes and exercises his legal right to flood a portion of said lands with water by his mill dam. The principle would be the same if his right authorized him to flood every rod of the land conveyed to the plaintiffs. Would such an act, legally done, constitute a breach of the defendant's covenant? Is the plaintiff, in legal effect, deprived of the possession, of the use, of the enjoyment of such lands as are under water by virtue of Douglass' right? If the plaintiffs' possession is taken away by a paramount title the action will lie for a breach of the covenant for quiet enjoyment. It is as effectually taken away in this case at the election of Douglass as though he had the title in fee simple. To the extent that the lands deeded by defendant to plaintiffs are taken possession of by Douglass to maintain his dam and sustain his head of water, the plaintiffs are injured and have their action for the breach of the covenant. It has been so decided in an analogous case in this department in *Rea* v. *Minkler* (5 Lans., 196). That was a private right of way over the lands, a much less

obnoxious disturbance of possession than the present. The case of *McMullin* v. *Wooley* (2 Lans., 394) relates to carrying water in pipes underground where the use and occupation of the lands are not sensibly affected. So of *Whitbeck* v. *Cook* (15 Johns., 483), relating to a highway of which the owner has the use, possession and title subject only to the public right of way. It is difficult to reconcile or distinguish all cases to be found in the books on this subject. But it seems proper to follow the decision of our own court until it is overruled.

This conclusion, I insist, is just and reasonable. It gives to the parties what they had a right to expect under their contract. It gives to the plaintiffs what they bought, or damages for its loss. It subjects the defendant to liability for selling what he did not own, and agreeing that plaintiffs should have and enjoy it. Many cases indicate that the plaintiffs should have required covenants of seizin or against incumbrances in order to maintain an action for such cause as this. The old English law was very technical in its requirements. To a considerable degree those technicalities are still retained. But there is a growing tendency to disregard unmeaning and useless rules, and to search for and administer justice when it can be done. This is an appropriate case for the exercise of any legal power the court may possess in giving a remedy, if the wrong shall be made to appear, rather than turn the plaintiffs out of court upon a technicality.

The interlocutory judgment should be affirmed, with costs, with the usual leave to answer, etc.

BOOKES, J., concurred.

LEARNED, P. J. (dissenting):

There is in the complaint, as it will be seen, a general allegation that the plaintiffs have not been permitted peaceably to enjoy, etc. No force however has been given to these general words, upon the argument of the appeal. They are probably insufficient by themselves to show a breach. Nor has any force been given to the allegation of the plaintiffs' purpose in the purchase or of the defendant's knowledge. The question argued has been whether the facts stated constitute a breach of the covenant.

The deed is the usual warranty deed. It describes the land simply by metes and bounds. It does not describe it as a mill site, or even as land partly covered by a stream of water. So far as the deed is concerned, it cannot be told what was on the land, if any thing. It adds the usual phrase "with the appurtenances," and concludes with the usual covenant of warranty, making no special covenant of any kind. We may however consider that it is admitted by the demurrer that, at the time of the conveyance, there was on the premises a water power, and a flouring mill run thereby.

Yet it may be doubted whether that circumstance is important on the mere question of eviction, although highly important, if there be an eviction, upon the question of damages. The alleged eviction consists in this : That a person, owning land next below the plaintiffs on the river, lawfully raised, as he had a right to do, his dam, without plaintiffs' permission, some eight inches higher than it was at the time of the conveyance ; the effect of which act was to set back the water of the river upon plaintiffs' land, to overflow a part, to obstruct plaintiff's waterwheel and to undermine their buildings. The obstruction of the waterwheel and the undermining of the buildings were only aggravations of the alleged injury. An overflowing of the plaintiffs' land would be, in kind, the same wrongful act. That is to say, if the raising of the dam and the consequent setting back of the water is an eviction, because it impeded the plaintiffs' wheel and undermined their buildings, it would follow that, in a less degree, such raising of the dam and setting back of the water would be an eviction if it only caused an overflow of the plaintiffs' land. And, of course, the only question here is whether there was an eviction. No one will dispute that to recover on such a covenant as this there must be an eviction.

It does not seem to be necessary to give any effect to the word "appurtenances." Whatever is by right appurtenant passes without that word. (*Huttemeier* v. *Albro*, 18 N. Y., 48.) Whatever is not by right appurtenant of course does not pass. And though an easement appeared to be appurtenant, but was not at the time of the conveyance, yet the ordinary covenant of warranty does not warrant its enjoyment. (*Green* v. *Collins*, 86 N. Y., 246.) Of course, if the apparent easement be over the land of the grantor, it passes by the grant (*Lampmann* v. *Milks*, 21 N. Y., 505), that

is, if its existence were known to the grantor. (*Tabor* v. *Bradley*, 18 N. Y., 109.)

So far, then, as the defendants' rightful act affected, or took away, only an easement which, at the time of the conveyance, appeared to be appurtenant to the premises, it was not an eviction which gave a cause of action upon the covenant of warranty. This seems to be definitely decided by *Green* v. *Collins* (*ut supra*). That was the exact point discussed in that case and passed upon by the General Term. (27 Sup. Co. [20 Hun], 474.)

It is however claimed that the present case is controlled by the decision in *Adams* v. *Conover* (87 N. Y., 422). These two cases are analyzed and compared in 25 Albany Law Journal, 279, and the distinction is there supposed to be that the easement in the one case related to a dam; in the other, to a drain. But, as the court in *Adams* v. *Conover* adhere to the doctrine of *Green* v. *Collins*, it is necessary to see, if possible, what the distinction is.

There are some expressions in the opinion in *Adams* v. *Conover* which I suppose cannot be exactly accurate. It is said that the grantee " lost, by force of the paramount title a thing actually conveyed." Again " the deed conveyed the dam at its existing height." Again, " the deed *both conveyed, and as we construe it, purported to convey* the identical thing destroyed by a paramount title." Now I suppose that, if the thing had been in fact conveyed by the deed, it could not have been lost by the paramount title. The grantee lost what was *not* conveyed by the grant, but what the covenant bound the grantor to protect. Covenants of warranty are broken, because the deed does *not* convey the thing which it purports to convey; and hence the grantee is evicted by a paramount title.

So again, it is said in the opinion that, in *Green* v. *Collins*, the grantee was not evicted from anything which passed by the grant. Certainly not, because if it had passed by the grant, he could not have been evicted. The question in all these actions on covenant is not, what passed by the grant, but to what did the covenant bind the grantor. Now in *Adams* v. *Conover* there was a dam on the premises, the effect of which was to overflow the land of one Felt, lying higher up on the stream. The court say that, if there were nothing else of the case than the apparent easement on Felt's

land, such apparent easement would not be within the covenant of warranty. But they say that the deed (not of course by any express language therein), purported to convey the dam as it existed, as it stood and the water-power, it thus indicated and measured. And that, as the plaintiff was compelled to reduce the height of that dam, he was deprived of a part of the property which the deed purported to convey. I understand then the court to hold that the apparent easement to flood Felt's land was not guaranteed by the covenant; but that the existing height of the dam was. And that where the grantee was compelled to lower his dam, the covenant was broken. That is to say, I understand the decision to hold that the ordinary covenant of warranty guarantees the right to retain all structures upon the premises in the same condition in which they were at the time of the grant, excepting, perhaps, sewer pipes in a building. (*Green* v. *Collins*.)

Chancellor KENT says that there are implied, as well as express, covenants concerning land. (4 Kent Com., 473.) But now, by the Revised Statutes, no covenant shall be implied in any conveyance. (1 R. S., 738, § 140.) I suppose therefore that, even if the premises either in the present case or in *Adams* v. *Conover*, had been described as containing a water-power, there would be no implied covenant that such water-power existed. Or if the deed had described the height of the water-power I suppose that no covenant could be implied as to the height. The doctrine, then, of *Adams* v. *Conover* must be that the mere covenant of warranty guarantees to the grantee the right to retain all structures on the land, as they were at the time of the grant, excepting probably sewer pipes in a building.

It seems to me that in *Adams* v. *Conover* the court holds that a lawful prevention by paramount title of the overflowing of Felt's land was not a breach of the covenant of warranty. But that a lawful lowering of the structure of the dam by such paramount title was such breach. If, in that case, the water had not overflowed Felt's land, but if Felt had had the right to require the dam to be lowered, the decision must have been the same.

The plaintiffs' counsel urges that the vendor is not to be permitted to indulge in a palpable fraud upon his vendee. On this point, however, notice that in an action upon the covenant of war-

ranty, the defendant cannot give parol evidence to control the effect of the deed. If the grantee had known of the right of Douglass to erect the obstruction, still the grantor would have been equally liable. (*Mott* v. *Palmer*, 1 N. Y., 574; *Suydam* v. *Jones*, 10 Wend., 180; *Jackson* v. *Croy*, 12 John., 427.) But if the acts of Douglass are a breach of the covenant of warranty, made by the defendant, then it matters not that the plaintiff was informed before he purchased, that Douglass had this paramount right. The question is not one of fraud but of contract. And if the defendant chose to execute such a covenant as would be broken by the exercise of the right which Douglass had, he could do so, even though the grantee knew of Douglass' rights. If the grantee, on the other hand, did not take proper covenants, then he could not recover, whether the grantor had title or not.

The case of *Mott* v. *Palmer* (1 N. Y., 564) arose on a covenant of seizin, not on a covenant of warranty. It was held that the lawful taking away by paramount title of a fence which stood on the premises at the time of the conveyance was a breach of that covenant. The reason was that a covenant of seizin of the land was a covenant of seizin of all that was attached thereto, so as ordinarily to be a part thereof. If the action had been one on the covenant of warranty, and if the grantee, instead of losing title to his fence had only been required to lower it, without any loss of title, probably the plaintiff would not have recovered.

In *Burke* v. *Nichols* (2 Keyes, 670) a house, standing principally on the lot, conveyed with full covenant, projected fourteen inches on an adjoining lot. From these fourteen inches the grantee had been evicted. It was held that no cause of action existed on the covenants. If then in *Adams* v. *Conover* the grantee's dam had been partly on Felt's land and he had been compelled to take it down altogether, it would seem that he could not have recovered on his covenants.

Now in this present case the plaintiffs have been prevented from having the free flow of the stream over the land lying below them, as it existed when they purchased. What is the nature of the right which the plaintiffs would otherwise have had? They would not even then have owned the land below them. They would not have owned the water which flowed across their land and upon that

below. (2 Bl. Com., 18; 1 Bracton, 7.) But they would have had, as is sometimes said, an easement in the land below, viz., the land of Douglass and of others for the free passage of the water from their land. (*Cary* v. *Daniels*, 5 Metc., 236; *Prescott* v. *Williams*, Id., 429; Angell on Watercourses, § 8.)

The obstruction put in the stream by Douglass and the consequent setting back of water on plaintiffs' land is either: 1st. An interference with an easement which would (but for Douglass' right) belong to plaintiffs, viz., the easement of having the water flow off. In that case it is not a breach of the covenant of warranty as is clearly decided in *Green* v. *Collins* and in *Adams* v. *Conover*; or, 2d. It is an easement of Douglass which he exercises over land of the plaintiffs. In that case such easement is not a breach of the covenant of warranty. (*Janes* v. *Jenkins*, 34 Md., 11; *Hendricks* v. *Stark*, 37 N. Y., 106; *McMullin* v. *Wooley*, 2 Lans., 394; *Whitbeck* v. *Cook*, 15 Johns., 483; *Mitchell* v. *Warner*, 5 Conn., 497.) To say that every easement which exists over a piece of land is a breach of the covenant of warranty of that land is to confound, as I think, that covenant with the covenant against incumbrances. Nor do I see how the rule can be applied that there must be an eviction to constitute a breach. Suppose a vacant lot is conveyed with covenant of warranty. In fact, the lot is subject to an easement in behalf of adjoining lots, that any house built thereon must stand a certain distance from the street. When is there an eviction? The easement is in existence at the very date of delivery of the deed. Was the grantee then evicted?

I suppose that the Revised Statutes intended to require grantees who desired to protect themselves to have the necessary covenants inserted to leave nothing to implication or inference. It has been well settled that the covenant of warranty was broken only by eviction; that is, by the actual taking away the whole or some part of the land which by the deed purported to be guaranteed. Mere limitations or restrictions upon the use of the land are not evictions. The title remains in the grantee and the possession. The easement may be a great incumbrance. But a covenant of warranty is not a covenant against incumbrances. And a covenant of quiet enjoyment is practically the same as a covenant of warranty.

I think the judgment should be reversed and judgment for defendant given on the demurrer, with costs.

Judgment affirmed, with costs, with usual leave to answer.